IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| v.        ) | |
| ) | Case No. 1:15-cr-171 |
| **EMMANUEL PURCELL MCDANIELS,** ) | |
| **Defendant.** ) | |
| ) | |
| ) | |

## MEMORANDUM OPINION

A five-count superseding indictment has issued charging defendant with: (i) one count of conspiracy to commit Hobbs Act robbery, 18 U.S.C. § 1951(a): (ii) two counts of Hobbs Act robbery, 18 U.S.C. § 1951(a); and (iii) two counts of using, carrying, and brandishing a firearm during and in relation to a crime of violence, 18 U.S.C. § 924(c)(1)(A)(ii). At issue on this pre-trial motion to dismiss two counts of the superseding indictment is whether Hobbs Act robbery qualifies as a predicate crime of violence for § 924(c)(1)(A) pursuant to the definition of "crime of violence" set forth in § 924(c)(3). The matter has been fully briefed and argued and, for the reasons stated from the bench, an Order issued denying defendant's motion to dismiss in all respects. *United States v. McDaniels*, 1:15-cr-177 (Sept. 18, 2015) (Order) (Doc. 50). This memorandum opinion records and elucidates the reasons for denying defendant's motion to dismiss, addressing specifically the following issues:

> (1) Whether the categorical approach applies to a motion to dismiss a § 924(c) count of an indictment on the ground that a Hobbs Act robbery— the predicate offense for the § 924(c) violation—is not categorically a crime of violence.

1

(2) Assuming the categorical approach applies, whether Hobbs Act robbery qualifies as a crime of violence pursuant to the "Force Clause" of § 924(c)(3)(A).

(3) Whether the "Residual Clause" of § 924(c)(3) is unconstitutionally vague, and hence cannot serve as a basis for the conclusion that a Hobbs Act robbery qualifies as a § 924(c) crime of violence.

### I.

The pertinent facts as set forth in the superseding indictment may be succinctly summarized. On or about February 13, 2015, defendant and two co-conspirators robbed a McDonald's in Arlington, Virginia. One co-conspirator served as the getaway driver, and defendant and his co-conspirator entered the McDonald's wearing masks and wielding firearms. One of the gunmen jumped the counter, pointed his gun at employees and demanded money from the cash registers and the safe. At the same time, the other gunman ordered patrons at the front of the store not to move. After obtaining approximately $2,221.00 in cash from the restaurant's employees, the men fled the restaurant, entered a black Toyota, and left the area.

On or about March 6, 2015, at approximately 5:49 p.m., defendant and a co-conspirator robbed a Radio Shack in Arlington, Virginia. Store surveillance cameras captured the events of the robbery. At approximately 5:49 p.m., defendant, wearing a mask and carrying a red backpack, entered the store and brandished a handgun, demanding that the store clerk to give him the money from the register. After the clerk relinquished $393.00 in cash, defendant fled out the store's front door, entered a waiting Toyota Avalon driven by his co-conspirator, and the pair then left the area.

On August 4, 2015, a grand jury returned a superseding indictment charging defendant with: (i) conspiracy to commit Hobbs Act robbery, 18 U.S.C. § 1951(a); (ii)

2

two counts of Hobbs Act robbery, 18 U.S.C. § 1951(a); and (ii) two counts of using, carrying, and brandishing a firearm, 18 U.S.C. § 924(c)(1)(A)(ii).

Defendant moved to dismiss the two § 924(c)(1)(A)(ii) counts on the ground that Hobbs Act robbery cannot qualify as a predicate crime of violence for § 924(c) pursuant to the definition of "crime of violence" set forth in § 924(c)(3). On September 18, 2015, an Order issued denying defendant's motion to dismiss in all respects. *McDaniels*, 1:15-cr-177 (E.D. Va. Sept. 18, 2015) (Order) (Doc. 50).

## II.

Pursuant to § 924(c), a defendant who "during and in relation to any crime of violence ... uses or carries a firearm ... shall, in addition to the punishment provided for such crime of violence ... if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years." 18 U.S.C. § 924(c)(1)(A)(ii). In order to prove a violation of § 924(c)(1)(A)(ii), "the [g]overnment must prove: (1) the defendant possessed and brandished a firearm; and (2) he did so during and in relation to a crime of violence." *United States v. Jenkins*, No. 15-4135, 2015 WL 6121552, at *1 (4th Cir. Oct. 19, 2015) (citing *United States v. Strayhorn*, 743 F.3d 917, 922 (4th Cir. 2014)). The statute defines "crime of violence" as any felony:

> (A) [that] has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). Subsection (A) and subsection (B) are commonly referred to as the "Force Clause" and the "Residual Clause" respectively. At issue here is whether Hobbs

Act robbery[1] qualifies as a "crime of violence" under either the Force Clause or the Residual Clause of § 924(c)(3).

### III.

Analysis properly begins by considering whether the "categorical approach," as developed in *Taylor v. United States*, 495 U.S. 575, 598-602 (1990), applies when determining, on a pre-trial motion to dismiss, whether an offense qualifies as a crime of violence under § 924(c). If the categorical approach applies, then it must be determined whether Hobbs Act robbery categorically meets the definition of "crime of violence" set forth in § 924(c)(3). If the categorical approach does not apply, then the question whether Hobbs Act robbery qualifies as a § 924(c) crime of violence depends on the facts of this particular case, and because "crime of violence" is an element of the § 924(c) offense, the question must be must be submitted to a jury, which must then determine on the basis of the evidence presented whether the government has proven beyond a reasonable doubt that the robbery was a crime of violence pursuant to § 924(c).

To begin with, it is important to recognize that the categorical approach is a judicially devised mode of analysis born and developed in the sentencing context for the purpose of ensuring that defendants are not punished for facts that are not found beyond a reasonable doubt by a jury. In *Taylor*, the Supreme Court elucidated this point. There the Supreme Court held that a sentencing court must take a "categorical approach" in determining whether a crime counts as a predicate offense for purposes of an Armed Career Criminal Act ("ACCA") sentencing enhancement. 495 U.S. at 600. Specifically,

---

[1] Hobbs Act robbery is "the unlawful taking or obtaining personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future... ." 18 U.S.C. § 1951(b)(1).

4

*Taylor* teaches that a sentencing court may "'look only to the statutory definitions'—*i.e.*, the elements—of a defendant's [offense] and *not* 'to the particular facts underlying [the offense]'" in determining whether the offense qualifies as a "crime of violence" for purposes of a sentencing enhancement. *Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013) (quoting *Taylor*, 495 U.S. at 600).[2] Put differently, "a court assesses whether a crime qualifies as a violent felony in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." *Johnson v. United States*, 135 S. Ct. 2551, 2557 (2015) (internal quotation marks and citation omitted).[3] The Supreme Court in *Taylor* justified the categorical approach in the context of ACCA sentencing enhancements on the basis of statutory text, legislative history, and practical considerations involving the difficulty of re-trying the factual basis for a prior conviction in subsequent sentencing proceedings. *See Taylor*, 295 U.S. at 600-

---

[2] If a defendant was previously convicted pursuant to a statute with elements that are equivalent to the elements of the "generic ACCA crime, then the prior conviction can serve as an ACCA predicate." *Id.* (quoting *Taylor*, 495 U.S. at 599). Yet, when the relevant statute "sweeps more broadly than the generic [ACCA] crime, a conviction under that law cannot count as an ACCA predicate, even if the defendant actually committed the offense in its generic form." *Id.*

[3] Importantly, sentencing courts may apply a modified categorical approach to crimes that are "divisible" insofar as "they set out elements in the alternative and thus create multiple versions of the crime," and under this approach, "courts may look beyond the statutory text and consult a limited set of documents in the record" in order to determine the nature of the crime charged. *Omargharib v. Holder*, 775 F.3d 192, 197, 198 (4th Cir. 2014) (internal quotation marks and citation omitted). Relevant documents include the "charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms." *Johnson v. United States*, 559 U.S. 133, 144 (2010) (citations omitted).

02. Since *Taylor*, the Supreme Court and the Fourth Circuit have consistently applied the categorical approach to numerous ACCA sentencing enhancement determinations.[4]

Until very recently, the categorical approach was limited to the sentencing context. Yet, in 2015, the Fourth Circuit, for the first time, applied the categorical approach in a context other than sentencing. Specifically, the Fourth Circuit applied the categorical approach in two recent cases involving post-trial determinations as to whether sex trafficking by force, fraud, or coercion qualified as a § 924(c) crime of violence. *See United States v. Naughton*, No. 13-4816, 2015 WL 5147399, at *7 (4th Cir. Sept. 2, 2015); *United States v. Fuertes*, Nos. 13-4755, 13-4931, 2015 WL 4910113, at *8 (4th Cir. Aug. 18, 2015). The Fourth Circuit in *Fuertes* reasoned that the sex trafficking offense "allows for both violent and nonviolent means of commission," and therefore does not qualify as a §924(c) crime of violence under the categorical approach. 2015 WL 4910113, at *8. Similarly, in *Naughton*, the Fourth Circuit, again citing the categorical approach and relying on the reasoning of *Fuertes*, held that the district court's determination that a sex trafficking conspiracy offense was a § 924(c) crime of violence amounted to plain error. 2015 WL 5147399, at *7.

Defendant argues that because the Fourth Circuit applied the categorical approach in *Fuertes* and *Naughton*, it follows that the categorical approach must be applied to all determinations as to whether a crime qualifies as a § 924(c) crime of violence, even where, as here, the question arises not in the sentencing context, but on a pre-trial motion to dismiss counts of an indictment. Yet, a close reading of *Naughton* and *Fuertes* points

---

[4] *See, e.g., Johnson*, 135 S. Ct. at 2557; *Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013); *Shepard v. United States*, 544 U.S. 13, 16-17 (2005); *United States v. Hemingway*, 734 F.3d 323, 327-28 (4th Cir. 2013); *United States v. Peterson*, 629 F.3d 432, 435 (4th Cir. 2011); *United States v. Diaz-Ibarra*, 522 F.3d 343, 348 (4th Cir. 2008).

persuasively to the conclusion that the categorical approach does not apply to pre-trial determinations as to whether a crime qualifies as a § 924(c) crime of violence. Importantly, both *Fuertes* and *Naughton* arose on post-trial motions.[5] In *Fuertes*, the defendant filed a post-trial motion for judgment of acquittal or a new trial with respect to the § 924(c) count on the ground that the district court erred in instructing the jury that "sex trafficking by force, fraud, or coercion is *categorically* a crime of violence." *Fuertes*, 2015 WL 4910113, at *7 (emphasis added). In other words, rather than instructing the jury to determine whether the particular defendant's commission of sex trafficking by force, fraud, or coercion qualified as § 924(c) crime of violence, the district court instructed the jury that, as a matter of law, the sex trafficking offense was a § 924(c) crime of violence. The district court denied the defendant's post-trial motion for judgment of acquittal, and the defendant appealed. *Id.* The Fourth Circuit held that the district court's jury instruction amounted to plain error, vacating the defendant's § 924(c) conviction and remanding for entry of judgment of acquittal on that count. *Id.* at *8-10.[6] Similarly, in *Naughton*, the district court instructed the jury that conspiracy to commit sex trafficking *categorically* qualified as a § 924(c) crime of violence, and the defendant filed a post-trial motion for judgment of acquittal, which the district court denied. *Naughton*, 2015 WL 5147399, at *2. Following the reasoning of *Fuertes*, the Fourth Circuit in *Naughton* held that the district court's jury instruction amounted to plain error and vacated the § 924(c) conviction. *Id.* at *7-8. Importantly, the Fourth Circuit in

---

[5] *See Fuertes*, 2015 WL 4910113, at *1; *Naughton*, 2015 WL 5147399, at *2.

[6] The Fourth Circuit reviewed defendant's claim for plain error because defendant "neither objected to the instruction nor argued that [the offense] is not categorically a crime of violence." *Id.* at *7.

7

*Fuertes* and *Naughton* did not have occasion to address or consider whether it would have been appropriate to allow a jury to decide whether the particular commission of each sex trafficking offense met the definition of a § 924(c) crime of violence.

Here, unlike in *Fuertes* and *Naughton*, defendant challenges the use of Hobbs Act robbery as a predicate offense for § 924(c) on a *pre-trial* motion to dismiss the § 924(c) counts. In such circumstances, it is inappropriate to apply the categorical approach. The phrase "crime of violence" is an element of § 924(c)—rather than a sentencing factor—and therefore "must be submitted to a jury and found beyond a reasonable doubt." *See Alleyne v. United States*, 133 S. Ct. 2151, 2258 (2013). Some offenses may be *categorically* crimes of violence, while others may be *categorically* not crimes of violence. That is, the commission of some crimes may always be violent while the commission of others may never be violent.[7] In any event, the point here is that in this case the task of assessing whether the facts of the Hobbs Act robbery alleged here fit the definition set forth in § 924(c)(3) belongs to a properly instructed jury. Specifically, in the case at bar, a jury would be instructed that defendant's commission of the Hobbs Act robberies alleged qualify as crimes of violence only if the jury finds that the government has proven beyond a reasonable doubt that the commission of the Hobbs Act robberies "ha[d] as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). To conclude otherwise—to conclude that the categorical approach applies and that a Hobbs Act robbery is not categorically a crime of violence for purposes of a motion to dismiss an indictment—

---

[7] For example, murder may, in fact, always be committed as a crime of violence, while tax evasion may, in fact, never be committed as a crime of violence (although tax evasion may be a useful crime for convicting violent persons, such as Al Capone).

would effectively eliminate § 924(c) offenses for cases where the predicate offense is a Hobbs Act robbery, even in the most violent of circumstances. This anomalous result is one that Congress clearly never anticipated or intended.

Moreover, it would make no sense to apply the categorical approach to a pre-trial motion to dismiss an indictment because the practical considerations that gave rise to the categorical approach in the sentencing context are not present on a pre-trial motion to dismiss an indictment. Specifically, the categorical approach is necessary, for example, in the context of ACCA sentencing enhancements in order to avoid the difficult, and in some cases impossible, situations where a sentencing court would be required to re-try the factual basis for prior convictions. *See Taylor*, 495 U.S. at 600-02.[8] Such practical difficulties are not present in the pre-trial context of a motion to dismiss an indictment because a court can—and indeed must—allow the jury to decide whether the government has proved the elements of the alleged crime beyond a reasonable doubt, including specifically in this case, whether the facts of the robberies establish that they were crimes of violence.

In sum, the categorical approach does not apply on a pre-trial motion to dismiss an indictment, and therefore the question whether the commission of a particular Hobbs Act robbery qualifies as a § 924(c) crime of violence is properly submitted to a jury properly instructed as to the definition of a crime of violence set forth in § 924(c)(3).

---

[8] The use of the categorical approach in the ACCA sentencing enhancement context is further justified on the basis of the statutory text and legislative history of § 924(e), neither of which is relevant here. *Id.* at 600-01.

## IV.

Next, even assuming that the categorical approach applies in the context of a motion to dismiss an indictment—which it does not—it is nonetheless appropriate to consider whether Hobbs Act robbery is itself a crime of violence pursuant to § 924(c)(3). Defendant contends that Hobbs Act robbery does not qualify as a "crime of violence" pursuant to the Force Clause of § 924(c)(3)(A) because a defendant can be guilty of Hobbs Act robbery by placing "another" in future "fear of injury ... to his person or property." 18 U.S.C. § 1951(b). In this respect, defendant argues that the definition of Hobbs Act robbery does not, in a strict sense, entail the use or threatened use of "physical force" against another. Specifically, defendant suggests that one could place another in fear of injury by threatening to poison a person, threatening to expose a person to hazardous chemicals, threatening to place a barrier in front of a person's car, or threatening to lock a person up in the car on a hot day. According to defendant, it does not matter that the likelihood that a Hobbs Act robbery will be committed without physical force is slim, or that it does not arise in the instant case; it matters only that there is such a possibility. The sole case on which defendant relies in support of this theory is *United States v. Torres-Miguel*, 701 F.3d 165 (4th Cir. 2012).

Defendant's argument fails because the Supreme Court rejected the rationale of *Torres-Miguel* in a recent decision. *See United States v. Castleman*, 134 S. Ct. 1405, 1414-15 (2014). In *Torres-Miguel*, the issue before the Fourth Circuit was whether the defendant's prior conviction under a California statute warranted a sentencing enhancement because the crime for which defendant had previously been convicted had

an element of "violent force" pursuant to U.S.S.G. § 2L1.2.[9] *Id.* at 167. The California statute under which the defendant had been previously been convicted required proof that the defendant willfully threatened to commit a crime that "will result in death or great bodily injury to another." *Id.* at 168 (citing Cal. Penal Code § 422(a)). The Fourth Circuit held that the California offense was missing a "violent force" element, and therefore did not qualify as a "crime of violence" for sentencing purposes because the threat of *any bodily injury*, "even serious bodily injury or death," does not necessarily require the use of physical force, let alone "violent force." *Id.* at 168-69. As an example, the Fourth Circuit noted that a defendant could violate the California statute "by poisoning another, which involves no use or threatened use of force." *Id.* (citing *United States v. Cruz-Rodriguez*, 625 F.3d 274, 276 (5th Cir. 2010)).

As noted *supra*, the Supreme Court in *Castleman* implicitly rejected the rationale of *Torres-Miguel*. See *Castleman*, 134 S. Ct. at 1414-15. At issue in *Castleman* was a "'crime of domestic violence'" statute, which included as an element "'the use or attempted use of physical force.'" *Id.* at 1407 (quoting 18 U.S.C. § 921(a)(33)(A)(ii)). Like the defendant in this case, the *Castleman* defendant argued that "although poison may have forceful physical properties as a matter of organic chemistry, ... no one would say that a poisoner [uses] force or carries out a purpose by means of force when he or she sprinkles poison in a victim's drink." *Id.* at 1415. The Supreme Court squarely rejected this argument, reasoning that "[t]he use of force ... is not the act of sprinkling the poison" but "the act of employing poison knowingly as a device to cause physical harm." *Id.* The

---

[9] Specifically, § 2L1.2 defines "[c]rime of violence" as an "offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2.

11

Supreme Court further explained that "it does not matter" that "the harm occurs indirectly, rather than directly," noting that under the defendant's reasoning, "one could say that pulling the trigger on a gun is not a 'use of force' because it is the bullet, not the trigger, that actually strikes the victim." *Id.* The Supreme Court's reasoning in *Castleman* applies here and requires rejection of defendant's argument based on the *Torres-Miguel* decision.

Moreover, Hobbs Act robbery clearly qualifies as crime of violence under the Force Clause of § 924(c)(3)(A) because the definition of Hobbs Act robbery tracks the definition of common-law robbery,[10] which reflects the content of the Force Clause. The Fourth Circuit has held that common-law robbery is "the taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation." *United States v. Presley*, 52 F.3d 64, 69 (4th Cir. 1995). Importantly, "[v]iolence" is defined as "the use of force" and "[i]ntimidation" is defined as "the threat of the use of force." *Id.* at 69.[11] The Hobbs Act uses the phrase "fear of injury" rather than "intimidation," but the terms are functionally equivalent, as the test for intimidation is "whether an ordinary person ... reasonably could infer a threat of bodily harm from the defendant's acts." *See United States v. Woodrup*, 86 F.3d 359, 363-64 (4th Cir. 1996) (internal quotation marks and citation omitted).

---

[10] *See, e.g. United States v. Walker*, 595 F.3d 441, 446 (2d Cir. 2010) ("'The common law crime of robbery and the various federal statutory offenses of robbery have substantially the same essential elements.'") (quoting *United States v. W.T.T.*, 800 F.2d 790, 783 (8th Cir. 1986)). *Cf. Sekhar v. United States*, 133 S. Ct., 2720, 2724 (2015) (interpreting Hobbs Act extortion as adopting common-law standards).

[11] *See also* 2 Blackstone, Commentaries on the Laws of England 242 (Cooley 3d ed. 1884) (defining robbery as "the felonious and forcible taking from the person of another of goods or money to any value, by violence or putting him in fear.").

12

Ample case law confirms the conclusion that Hobbs Act robbery can serve as a crime of violence as defined by § 924(c)(3)(A). Indeed, a Hobbs Act robbery served as the predicate offense for a § 924(c) conviction in a Supreme Court case decided after *Miguel-Torres*. *See Alleyne*, 133 S. Ct. at 2155 (reviewing a § 924(c) conviction for which Hobbs Act robbery served as the predicate offense and holding that each element of the § 924(c) offense had to be submitted to the jury). Moreover, this and other circuits have consistently affirmed §924(c) convictions where the predicate offense is a Hobbs Act robbery.[12] Indeed, no court has reached a contrary result.

In sum, even assuming the categorical approach applied on a pre-trial motion to dismiss an indictment, a Hobbs Act robbery can serve as a crime of violence pursuant to the Force Clause because it "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A).[13]

## V.

Defendant further contends that Hobbs Act robbery does not qualify as a § 924(c) crime of violence pursuant to the Residual Clause of § 924(c)(3)(B) because the Residual

---

[12] *See e.g., United States v. Maddox*, 803 F.3d 1215, 1217 (11th Cir. 2015); *United States v. McBride*, No. 14-1851, 2015 WL 5004909, at *1 (3d Cir. Aug. 24, 2015); *United States v. Richardson*, 793 F.3d 612, 617 (6th Cir. 2015); *United States v. Adams*, 789 F.3d 713, 713 (7th Cir. 2015); *United States v. Kennedy*, 133 F.3d 53, 58 (D.C. Cir. 1998); *United States v. Mendez*, 992 F.2d 1488, 1491 (9th Cir. 1993).

[13] The same result obtains with respect to the Residual Clause, which would likewise operate to qualify Hobbs Act robbery as categorically a crime of violence. This is so because the Force Clause requires that a predicate offense actually involves "the use, attempted use, or threatened use of physical force," whereas the Residual Clause requires that a predicate offense involves "a substantial risk that physical force ... may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(A), (B). In other words, the only difference between the Force Clause and the Residual Clause is that one involves the use or attempted use of physical force and the other involves the risk of physical force. The risk of physical force is itself sufficient to qualify Hobbs Act robbery as categorically a crime of violence.

Clause itself is unconstitutionally vague in light of the Supreme Court's decision in *Johnson v. United States*. 135 S. Ct. 2551, 2257 (2015) (striking down the ACCA Residual Clause in § 924(e)(2)(B)(ii) as unconstitutionally vague). This issue need not be reached here because as noted *supra*, even assuming the categorical approach applied on a motion to dismiss the indictment, Hobbs Act robbery is categorically a crime of violence pursuant to the Force Clause of § 924(c)(3)(A). Yet, even if it were necessary to reach this issue, defendant's argument would fail because it misunderstands the teaching of *Johnson*, the sole decision on which defendant relies for his vagueness argument.

As a preliminary matter, it is important to note that the vagueness doctrine is itself vague. The Supreme Court has repeatedly held that a criminal statute is unconstitutionally vague if it fails to "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolendar v. Lawson*, 461 U.S. 352, 357 (1983).[14] Yet, this standard is of little help when determining whether a statute is vague. Indeed, as thoughtful judges have long recognized, unconstitutional indefiniteness "is itself an indefinite concept." *Winters v. New York*, 333 U.S. 507, 524 (1948) (Frankfurter, J. dissenting).[15] Thus, in determining whether *Johnson*

---

[14] *See, e.g., City of Chi. v. Morales*, 527 U.S. 41, 56 (1999); *Vill. of Hoffman Estates v. Flipside*, 455 U.S. 489, 498 (1982); *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972); *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 393 (1926).

[15] Commentators have also noted the indeterminacy of the language of the vagueness doctrine. *See, e.g.*, John Calvin Jeffries, Jr. *Legality, Vagueness, and the Construction of Penal Statutes*, 71 Va. L. Rev. 189, 196 (1985) ("The difficulty [in applying the vagueness doctrine] is that there is no yardstick of impermissible indeterminacy."); Anthony G. Amsterdam, Note, *The Void-for-Vagueness Doctrine in the Supreme Court*, 109 U. Pa. L. Rev. 67, 74 (1960) ("[V]agueness alone ... does not provide a full and rational explanation of the case development."). Indeed, some commentators have argued

is distinguishable, it is important to focus on the specific holding of *Johnson* rather than the elusive language of the vagueness doctrine.

In *Johnson*, the Supreme Court concluded that the ACCA Residual Clause was unconstitutionally vague because there were many "uncertainties in the ACCA Residual Clause" that "may [have been] tolerable in isolation," but in combination led to conclusion that the clause was unconstitutionally vague. *Id.* at 2257, 2560. *Johnson* is distinguishable from the present case because several of these factors are not present in the Residual Clause of § 924(c)(3)(B).[16] Specifically, unlike the ACCA Residual clause, the Residual Clause at issue here: (i) is not preceded by four enumerated offenses that create "uncertainty about how much risk it takes from a crime to qualify as a violent felony," (ii) has not created significant disagreement among lower courts, and (iii) has not been subject to several failed attempts by the Supreme Court to construe the clause in a "principled and objective" manner. *Id.* at 2558, 2560. The last factor was especially important to the Supreme Court's holding, as *Johnson* was the fifth case in a series of

---

that many vagueness determinations have little to do with vague language and are best understood as resting on two independent constitutional requirements: (i) that "all crime must be based on conduct;" and (ii) that "there must be a defensible and predictable correlation between the established meaning of a criminal prohibition and the conduct to which it is applied." Peter W. Low & Joel S. Johnson, *Changing the Vocabulary of the Vagueness Doctrine*, 101 Va. L. Rev. 2051, 2053 (2015). [It should be noted that one of this article's authors, Joel Johnson, is currently a law clerk in these chambers.]

[16] One factor, however, is arguably present here, as the Residual Clause requires a court to determine whether the ordinary case of potential predicate offense "involves a substantial risk" of physical force. 18 U.S.C. § 924(c)(3)(B). *Cf. Id.* at 2557 (finding that the ACCA Residual Clause created "uncertainty about how to estimate the risk posed by a crime").

15

attempts to construe the ACCA Residual Clause.[17] The Supreme Court concluded in *Johnson* that the "persistent efforts" in the prior four cases "to establish a [principled and objective] standard provide[d] evidence of vagueness" in the ACCA residual clause. *Id.* at 2258, 2260 (internal quotation marks and citation omitted). Here, in contrast to the ACCA, the Residual Clause of § 924(c)(3)(B) has not be been subject to repeated failures to construe it in a principled and objective way, and therefore does not lead to applications that are "unexpected and indefensible by reference to the law which had been [previously] expressed." *Bouie v. City of Columbia*, 378 U.S. 347, 354 (1964).[18] Thus, even if it were necessary to reach the question—and it is not—the Residual Clause of § 924(c)(3)(B) would likely fail as unconstitutionally vague as it is distinguishable from the ACCA Residual Clause at issue in *Johnson*.

## VI.

For the reasons stated here, defendant's motion to dismiss is denied.

A final comment deserves emphasis. If defendant were correct that the categorical approach applied and that Hobbs Act robbery is not categorically a crime of violence pursuant to § 924(c)(3), then Hobbs Act robbery could *never* serve as a predicate offense for purposes of § 924(c), even in the most violent of circumstances. Such a result would

---

[17] *See Sykes v. United States*, 131 S. Ct. 2267, 2270 (2011); *Chambers v. United States*, 555 U.S. 122, 123 (2009); *Begay v. United States*, 553 U.S. 137, 139 (2008); *James v. United States*, 550 U.S. 192, 211-12 (2007).

[18] Although *Bouie* is not a vagueness case, the principle derived from *Bouie* explains many vagueness cases, including *Johnson*, better than the indefinite language of the vagueness doctrine. *See* Low & Johnson, *supra* n.15, at 2053, 2064-74, 2108 (2015); *see also Sykes v. United States*, 131 S. Ct. 2287-88 (2011) (Scalia, J. dissenting) (noting that each new effort to construe the ACCA residual clause rendered it "less predictable and more arbitrary than the last.").

not only contravene precedents of this and other circuits,[19] but would also run contrary to Congressional intent.

An appropriate Order has already issued.

Alexandria, Virginia
November 23, 2015

/s/
_____
T. S. Ellis, III
United States District Judge

---

[19] *See supra* n.12.